

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2676 | **DATE** | 10/30/2002 |
| **CASE TITLE** | Olusola Younger vs. City of Batavia etc. et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. City of Batavia's motion for summary judgment is granted, Handel and Dixon's motion for summary judgment is granted, and Aurora University and Mauthe's motion for summary judgment is granted as to Aurora defendants but denied as to Target defendants. Counts I and III are dismissed, and all defendants other than Csorba and Target Corporation are dismissed from count II. Status hearing set for November 12, 2002 at 9:15am.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | OCT 31 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | 54 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAH | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| OLUSOLA YOUNGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 01 C 2676 |
| | ) | |
| CITY OF BATAVIA, a municipal corporation, | ) | |
| TARGET CORPORATION, AURORA | ) | |
| UNIVERSITY, EDWARD HANDEL, J. DIXON, | ) | |
| BRIAN CSORBA and JEREMY, | ) | |
| | ) | |
| Defendants. | ) | |

DOCKETED
OCT 31 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff alleges a Fourth Amendment violation, false imprisonment, intentional infliction of emotional distress, and defamation. Defendant City of Batavia (City), defendant police officers Edward Handel and Jim Dixon (officers), and defendants Aurora University and Jeremy Mauthe (Aurora defendants) each move for summary judgment on the counts against them. Defendants Brian Csorba and Target Corporation (Target defendants) adopt Aurora defendants' motion for summary judgment on the false imprisonment claim. For the following reasons, the City's motion is granted, the officers' motion is granted, and Aurora defendants' motion is granted as to Aurora defendants but denied as to Target defendants.

## BACKGROUND

On September 15, 2000, plaintiff purchased merchandise from a Target store. Unknown to plaintiff at the time, Brian Csorba, a security person at Target, called Jeremy Mauthe, a security person at Aurora University, and told him that he recognized plaintiff as someone who had been at Target on an earlier occasion using an Aurora student's stolen credit

cards. Csorba followed plaintiff out of the store and wrote down her license plate number, which he then passed on to Mauthe along with a description of plaintiff's car and what she was wearing that day. Mauthe in turn contacted the Batavia Police Department, gave them plaintiff's information, and told them he believed she was a suspect in fraudulent credit card purchases.

After shopping at two other stores, plaintiff was driving to pick up her children from daycare. At about 5:35 p.m. she was pulled over by police officer Handel. Handel informed her that he was investigating a report that plaintiff had been making fraudulent credit card purchases in neighborhood stores. Plaintiff provided identification, responded to Handel's questions and showed him a cash receipt for her purchases at Target. Handel told her that a photograph of the suspect would be brought to the scene to help determine if plaintiff was the suspect. Officer Dixon then arrived at the scene and spoke with Handel. He apparently had with him a piece of paper. While she did not see what was on the paper, plaintiff claims that the paper provided information that showed she was not the suspect, and that the officers were comparing it with her I.D. picture.

During the stop, plaintiff informed the officers that she needed to pick up her children at a nearby daycare center. The officers moved the stop to the daycare center, where Handel parked in the center parking lot and Dixon parked across the street. Plaintiff retrieved her children and brought them to her car where she was approached by Handel. Plaintiff says she was upset and uncomfortable talking in front of bystanders and told Handel she did not want to discuss anything there. Handel told her they would continue the stop at her house. At some point, Dixon received a photograph of the suspected offender and concluded that plaintiff was

not the same person. The officers have offered affidavit testimony that the photo was delivered by an Officer Jensen to Dixon while he was parked across the street from the daycare center. Officer Handel has also testified that he did not see the photo until he was at the apartment complex.

The stop then proceeded approximately one block to the street outside of plaintiff's apartment complex. After tending to her children, plaintiff exited her car, approached the officers, and was told she was not the person in the photograph. Plaintiff viewed the photograph. Officer Dixon apologized and the stop ended around 6:05 pm.

## DISCUSSION

Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). We draw all inferences and view all admissible evidence in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). This does not mean there must be no evidence supporting the non-moving party, but rather it is not enough to support a reasonable jury verdict. *Id.* at 248.

Count I alleges that Handel and Dixon detained plaintiff in violation of her Fourth Amendment rights. An investigatory stop is unconstitutional only if the police conduct is not justified at its inception or if the remainder of the investigation is not reasonably related to the circumstances that justified the stop. U.S. v. Robinson, 30 F.3d 774, 784 (7th Cir. 1994); U.S. v. Swift, 220 F.3d 502, 506 (7th Cir. 2000). Handel's initial stop was justified because the information he had at that time supported a reasonable suspicion that plaintiff was involved in criminal activity. *See* Terry v. Ohio, 392 U.S. 1 (1968).

To determine the stop's continuing reasonableness, we examine the scope and duration of its intrusiveness in light of the surrounding circumstances. Robinson, 30 F.3d at 784. Plaintiff has presented no evidence to support her contention that Handel or Dixon were in possession of the suspect's photograph at any point before the stop moved to the daycare center. While the stop was at the initial location, then, the officers were waiting for a photograph that would most likely dispose of suspicion. It was therefore reasonable for them to detain plaintiff until that photograph arrived. *Id.*

The remaining issue is whether it was unreasonably intrusive for the officers to detain plaintiff from the time the photograph was obtained to the time when they informed her that she was no longer under suspicion, a matter of a few minutes. The officers moved the stop to the daycare center in order for plaintiff to pick up her children. While it would have been better to conclude the matter there, we do not believe that a jury could reasonably conclude that Handel acted unreasonably when he chose to move the stop to plaintiff's house, especially in light of plaintiff's discomfort in front of bystanders at the daycare center. And it was not unreasonable for Dixon to take the few minutes before and after the ride to plaintiff's home to confirm plaintiff's non-involvement, first by speaking with radio dispatch and then by conferring with Handel. Plaintiff was understandably upset and uncomfortable having to drive from the daycare center to her apartment between two police cars. But, however, we also recognize that in an unfolding investigatory stop fluidity is required to meet the circumstances. U.S. v. Swift, 220 F.3d 502, 506 (7th Cir. 2000). Even viewing the facts in the light most favorable to plaintiff, the officers' conduct throughout the half-hour stop was reasonable.

In count III, plaintiff claims intentional infliction of emotional distress against Handel,

Dixon and the City. To succeed on her claim plaintiff must show that the officers' conduct was extreme and outrageous, that they intended or knew that their conduct would inflict severe emotional distress, and that the conduct must in fact cause severe emotional distress. McGrath v. Fahey, 125 Ill.2d 78, 86, 533 N.E.2d 806. 809 (1989). Defendants argue that the undisputed facts show that their conduct was not extreme or outrageous and thus defeat plaintiff's claim. We agree.

Various factors can affect whether conduct rises to the actionable level of extreme and outrageous. We look to the degree of power or authority defendants hold: the more control, the more likely their conduct will be deemed outrageous. Honaker v. Smith, 256 F.3d 477, 490-491 (7th Cir. 2001) *citing* McGrath. Since defendants are police officers, we ask whether they were carrying out legitimate law enforcement duties. *Id.* We also consider whether defendants were aware that plaintiff was particularly susceptible to distress because of some physical or mental condition. *Id.* at 492.

As police officers executing an investigatory stop, Handel and Dixon were clearly in a position of authority. There is nothing in the record, however, that shows that they abused their power while seeking the legitimate objective of determining plaintiff's involvement. Again, plaintiff asks us to examine the officers' conduct after they allegedly knew she was not the suspect. For the same reasons that the extended detention was unconstitutional, she argues, it was also extreme and outrageous conduct. But as explained above, both officers acted reasonably and conscientiously during the final minutes of the stop. Plaintiff may have been visibly upset at the daycare center, but this does not mean that she had a physical or mental condition making her particularly susceptible to distress. Plaintiff has offered no

evidence that the officers were "grossly inappropriate" in their interactions with her. <u>Guy v. Riverside Police Officers</u>, 1999 WL 675296, *8 (N.D.Ill. 1999) (police officers ignoring information that plaintiff was not a suspected bank robber, searching plaintiff's person in front of bystanders, deliberately keeping her detained overnight, and attempting to coerce her into signing a false and inculpatory statement did not constitute extreme and outrageous conduct in the context of an investigation).

Plaintiff names all of the defendants in count II, her false imprisonment claim. Under Illinois law defendants will be liable if they caused or procured a restraint of the plaintiff without reasonable grounds to believe that plaintiff committed an offense. <u>Randell v. Lemke</u>, 311 Ill.App.3d 848, 852 726 N.E.2d 183, 186 (2nd Dist. 2000).

Defendants are correct that to establish restraint, plaintiff must show she was detained against her will, not merely that she felt compelled to stay. <u>Schroeder v. Lufthansa German Airlines</u>, 875 F.2d 613, 621-22 (7th Cir. 1989). Defendants rely on <u>Lopez v. Winchell's Donut House</u>, 126 Ill.App.3d 46, 466 N.E.2d 1309 (1st Dist. 1984), to support their assertion that plaintiff was not restrained and that she complied voluntarily with the investigation. In <u>Lopez</u>, an employee was accused of stealing. She was called into work, where she was then questioned by superiors in a locked room. She testified that she came into the store on her own and felt compelled to stay and protect her reputation. As a result, the court found that she was there voluntarily and had not been restrained. *Id.* at 51, 1312.

But here the alleged restraint was based on an assertion of law enforcement authority. Plaintiff pulled over in response to the flashing lights and siren of Handel's police car. She answered the officers' questions and complied with their requests, but doing what she was told

to do does not constitute consent to the detainment. While it is true that she was allowed to pick up her children during the stop, and thought she was free to do so, she was then followed by the officers to the daycare center. A reasonable jury could find that this constitutes an undesired restriction on her freedom of movement rising to the level of restraint. *Id.* (yielding to an asserted legal authority constitutes restraint).

Plaintiff must also show that defendants did not have reasonable grounds to believe she had committed an offense. As discussed above, Officers Handel and Dixon had reasonable grounds to believe plaintiff had fraudulently used credit cards. This defeats the false imprisonment claim against them as well as against the City.[1] While not argued in their motion, the Aurora defendants are also relieved from liability on this ground. It is undisputed that Mauthe received a phone call from Csorba identifying plaintiff as the person suspected of using stolen credit cards. It was reasonable for Mauthe to rely on this information since it came from a security person at the store where the alleged crime had been committed. Having not seen plaintiff, he could not compare her with the photograph of the suspect, and he had no reason to discredit Csorba's information. This provided him with reasonable grounds to believe she had committed a crime. See Schroeder, 875 F.2d at 622 (airline personnel who had received information from a credible source had reasonable grounds to restrain a passenger even though the information was limited).

The only person who may not have had reasonable grounds to believe plaintiff

---

[1] We note that the officers would also be immune to liability to both the state claims. Under 745 ILCS 10/2-202, "A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." An investigation of fraudulent credit card use would fall within the realm of execution or enforcement of law, Fitzpatrick v. City of Chicago, 112 Ill.2d 211, 492 N.E.2d 85 (1986); Fatigato v. Village of Olympia Fields, 281 Ill.App.3d 567, 666 N.E.2d 732 (1st Dist. 1996), and plaintiff has failed to offer evidence that the officers were engaged in willful and wanton conduct. *See generally* Smith v. City of Chicago, 242 F.3d 737 (7th Cir. 2001).

committed credit card fraud is the person who first identified her as the suspect. A reasonable jury could find that a comparison between plaintiff and the suspect in the photograph did not provide adequate grounds to believe that they were the same person. Accordingly, the false imprisonment claims against Csorba and Target Corporation remain, although it may well be that this court is no longer the proper forum to resolve that claim..

## CONCLUSION

For the above reasons, City of Batavia's motion for summary judgment is granted, Handel and Dixon's motion for summary judgment is granted, and Aurora University and Mauthe's motion for summary judgment is granted as to Aurora defendants but denied as to Target defendants. Counts I and III are dismissed, and all defendants other than Csorba and Target Corporation are dismissed from count II.

JAMES B. MORAN
Senior Judge, U. S. District Court

Oct. 30, 2002.